UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Kimberly Ann Henny, | Case No. 23-cv-2773 (PAM/DJF) |
| Plaintiff, | |
| v. | |
| United States; Colette Peters, Director of the Federal Bureau of Prisons; Andre Matevousian, Regional Director for the Federal Bureau of Prisons; Warden Michael Segal; Associate Warden Vaught; Captain Koch; Unit Director Parrent; Case Manager Koziolek; Case Manager Jensen; Recreation Director Dann; Dallenbach, Horticulture Director; Prince, Education Department Director; Lee, Food Services Director; Director of Safety Nelson; Officer Hodve; H.S.A. Loeffler; Nurse Officer Petersen; Officer Edel; Factory Manager J. Stanek; Officer Delaskey; Officer Lau; Officer Claudek; Officer Bailey; Officer Theuer; Murillo, Special Populations Coordinator; CMC Coordinator Hillsman; Lt. Tarrant; Kapischke, Housing Unit Director; Dr. Reyna; Dr. Swenson; Mr. Rammler, Mental Health Therapist; Mr. Wanderleich, Mental Health Therapist; and Officer Wanderschied, in their individual and official capacities, | **REPORT AND RECOMMENDATION AND ORDER** |
| Defendants. | |

Plaintiff Kimberly Ann Henny, a federal prisoner, initiated this action under multiple laws, including: the Federal Tort Claims Act ("FTCA"); 18 U.S.C. § 4042; the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"); 18 U.S.C. §§ 3631-3635; and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). She alleges a litany of unsafe and other improper conditions at the Federal Correctional Institution in Waseca, Minnesota ("FCI-

1

Waseca"), where she was incarcerated (ECF No. 1). Ms. Henny requests declaratory and injunctive relief, including that FCI-Waseca be closed until conditions improve, and monetary damages totaling $5.8 million. (ECF No. 1 ¶¶ 50-51, ¶ 52-54.) She applied to proceed *in forma pauperis* ("IFP") (ECF No. 2) and paid the initial partial filing fee pursuant to 28 U.S.C. § 1915(b) (ECF No. 11). This matter is now before the Court for preservice review pursuant to 28 U.S.C. § 1915A(b)(1). Based on that review, the Court recommends all claims be dismissed at this time except her FTCA claim against the United States for alleged negligence based on exposure to synthetic cannabinoid (K2) smoke during her incarceration.

## LEGAL ANALYSIS

### I. Standard of Review

Section 1915A requires courts to screen prisoner lawsuits against government officials at the beginning of each case, and to dismiss any portion of the complaint that: "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1). In determining whether a complaint states a claim, a court must accept as true all the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014). The factual allegations need not be detailed, but they must be sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Further, the complaint must "state a claim to relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although pro se complaints such as this one are entitled to a liberal construction, *Erickson v. Pardus*, 551

U.S. 89, 94 (2007), they nevertheless must contain specific facts in support of the claims they advance. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985). For the reasons given below, the Court finds the majority of Ms. Henny's claims do not meet the plausibility standard and should be dismissed.

## II.   Claims Analysis

### A.   FTCA Cannabinoid Exposure Claim

Ms. Henny alleges she was exposed to synthetic cannabinoid (K2) smoke while incarcerated at FCI-Waseca, particularly in bathroom areas, which she claims were not ventilated adequately and which corrections officers did not regularly patrol. (ECF No. 1 ¶ 40.) She asserts this exposure caused her to experience heart palpitations (tachycardia), hypertension, lung congestion and neurological damage, and supports this claim with medical records documenting her hypertension. (*Id.; see, e.g.,* ECF No. 3-1 at 2-7.) Based on these allegations, Ms. Henny asserts a negligence claim against the United States under the FTCA, 28 U.S.C. §§ 2671-2680. (ECF No. 1 ¶ 40.)

The FTCA "gives federal district courts exclusive jurisdiction over claims against the United States for 'injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission' of federal employees acting within the scope of their employment." *Levin v. United States*, 568 U.S. 503, 506 (2003) (quoting 28 U.S.C. § 1346(b)(1)). Ms. Henny claims she notified officials at FCI-Waseca that she was being exposed to K2 smoke, and that officials failed to respond adequately to her concerns. For the limited purpose of preservice review under 28 U.S.C. § 1915A(a), the Court recommends this claim be allowed to proceed. The Court makes this recommendation without prejudice to Defendants' right to seek dismissal on any ground. In other words, although the Court recommends this claim be allowed to proceed beyond

preservice review, the Court's recommendation should not be construed as a determination affecting any motion Defendants might bring, once they enter an appearance, under Rule 12(b)(6) of the Federal Rules of Civil Procedure or any other applicable rule.

### B.     Alleged Violations of 18 U.S.C. § 4042

Next, citing a report authored by the Department of Justice Office of Inspector General (DOJ-OIG), Ms. Henny claims the findings in the report demonstrate FCI-Waseca officials have failed to satisfy their statutory obligations under 18 U.S.C. § 4042(a)(2)-(3) by allowing unsafe and unhealthy conditions to persist. (ECF No. 1 ¶ 41.) She specifically alleges that: (1) the facility is overcrowded; (2) staffing levels are inadequate to ensure inmate safety and protection; (3) the medical care is inadequate; (4) deferred maintenance, including electrical and ventilation failures and roof leaks, have led to unsafe housing conditions; and (5) roof leaks have led to unsanitary food service. (*Id*. at 8.)

Section 4042(a)(2)-(3) provides:

(a) In General – The Bureau of Prisons, under the direction of the Attorney General, shall …

(2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise;

(3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States;

18 U.S.C. § 4042(a)(2)-(3).

These provisions describe the general duties of the BOP, but they do not establish a cause of action for damages. *See Dudley v. Bureau of Prisons*, No. CIV 09-4024, 2009 WL 1390792, at *2 (D.S.D. May 18, 2009). The Court further notes that, except as to the FTCA claim asserting poor ventilation, which the Court recommends proceed as discussed above, Ms. Henny does not claim to have suffered any personal injury arising from the allegedly unsafe conditions cited in the report.

4

Accordingly, Ms. Henny's claims alleging violations of 18 U.S.C. § 4042(a)(2)-(3) should be dismissed for failure to state a claim.

### C. CARES Act Claim

Ms. Henny also contends the BOP refused to transfer her to home confinement even though she is otherwise eligible for home confinement under the CARES Act, Public Law No. 116-136, 134 Stat. 281 (2020). (ECF No. 1 ¶ 42.) Congress enacted the CARES Act in response to the COVID-19 pandemic. *See Holt v. Warden*, 539 F. Supp. 3d 1005, 1007 (D.S.D. 2021). The CARES Act "expanded the BOP's discretion to increase the maximum amount of time that a prisoner may spend in home confinement." *Id*. The Attorney General subsequently "exercised emergency authority under … the CARES Act to expand the group of inmates who may be considered for home confinement in light of emergency conditions caused by the COVID-19 virus and its effect on prison populations." *United States v. James*, Case No. 15-cr-255 (SRN), 2020 WL 1922568, at *2 (D. Minn. Apr. 21, 2020) (citation omitted); *accord United States v. Brown*, Case No. 12-cr-172(3) (SRN), 2020 WL 1922567, at *2 (D. Minn. Apr. 21, 2020).

But the CARES Act "merely give[s] eligible inmates the possibility to be considered for home confinement." *James*, 2020 WL 1922568, at *2; *accord Brown*, 2020 WL 1922567, at *2. It does nothing to disrupt the BOP's exclusive authority to determine the placement of prisoners, including any placement on home confinement. *See Garcia v. Eischen*, No. 22-CV-444 (SRN/BRT), 2022 WL 4084185, at *2 (D. Minn. Aug. 16, 2022) (collecting cases). "[I]t is the BOP—not the courts—who decides whether home detention is appropriate." *Williams v. Birkholz*, No. 20-CV-2190 (ECT/LIB), 2021 WL 4155614, at *3 (D. Minn. July 20, 2021), *report and recommendation adopted*, 2021 WL 4155013 (D. Minn. Sept. 13, 2021). Although the CARES Act authorizes the BOP to place prisoners on home confinement for longer than previously

5

permitted under § 3624(c)(2), *see* CARES Act, H.R. 748, 116th Cong. § 12003(b)(2) (2020), nothing in that legislation, or the Attorney General's directives to the BOP in March and April 2020, *required* the BOP to place any specific prisoner or category of prisoner on home confinement. Moreover, "it is [] well established that prisoners do not have a constitutional right to placement in a particular facility or place of confinement. *United States v. James*, 15-CR-255 (SRN), 2020 WL 1922568, at *2 (D. Minn. Apr. 21, 2020).

Thus, to the extent Ms. Henny requests an order directing the BOP to place her on home confinement, this Court lacks authority to issue such an order. And to the extent Ms. Henny requests damages arising from BOP's purported failure to transfer her to home confinement under the CARES Act, she has not asserted a violation of any constitutional right or federal law. Ms. Henny's CARES Act claim should be dismissed for these reasons.

### D.      Violations of 18 U.S.C. §§ 3631-3635

Ms. Henny further asserts FCI-Waseca officials failed to house her and other prisoners according to their risk levels, in violation of 18 U.S.C. § 3632(c), and failed to offer sufficient evidence-based recidivism reduction programming or productive activities, in violation of 18 U.S.C. § 3632(a)(5). (ECF No. 1 ¶ 43.) This claim fails because the statutory language on which Ms. Henny's claim rests does not provide her with a right to sue.

"The fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon v. Univ. of Chi.*, 441 U.S. 677 (1979). "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275 (2001). Nothing in the statute, 18 U.S.C. § 3632 *et seq.*, expressly creates a private right of action. Moreover, the commanding language of the statute speaks exclusively to the Attorney General—directing the

*Attorney General* to develop a risk and needs assessment system to be used to "reassign prisoners to appropriate evidence-based recidivism reduction programs or productive activities," *see* 18 U.S.C. § 3632(a), and to provide "guidance on program grouping and housing assignment determinations," *see* 18 U.S.C. § 3632(c).  This language focuses "on the person regulated rather than the individuals protected," and therefore "creates no implication of an intent to confer rights on a particular class of persons."  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002) (quoting *Alexander*, 532 U.S. at 289) (internal quotations omitted)).

Furthermore, to the extent Ms. Henny's Complaint might be construed to assert a constitutional due process claim based on these alleged violations, any such claim is equally without merit.  The Supreme Court has long held that prisoners have no liberty interest in their security classification or eligibility for rehabilitative programs.  *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (federal prisoners have no "statutory or constitutional entitlement sufficient to invoke due process" in their prison classification or eligibility for rehabilitative programs).  Ms. Henny's claims for alleged violations of sections 3632(a)(5) and 3632(c) should be dismissed for failure to state a claim on these grounds.

E. ***Bivens* Claims**

Finally, Ms. Henny asserts a cause of action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (*Bivens*), claiming that FCI-Waseca officials failed to protect her from the threat of sexual assault and exposure to illicit drugs, including synthetic cannabinoids, in violation of her rights under the Eighth Amendment to the U.S. Constitution.  (ECF No. 1 ¶ 46.)  Nowhere in the Complaint does Ms. Henny allege that she, herself, was the victim of sexual assault.  (ECF No.1.)  Rather, citing the DOJ-OIG report, Ms.

Henny claims the conditions of FCI-Waseca present an unreasonable *risk* of harm from sexual assault. (*Id.*)

Under *Bivens*, the "victims of a constitutional violation by a federal agent have a right to recover damages against [that] official in federal court despite the absence of any statute conferring such a right." *Carlson v. Green*, 446 U.S. 14, 18 (1980) (citing *Bivens*)). *Bivens* does not provide Ms. Henny with any source of relief, however.

Ms. Henny sues the Defendants in both their individual and official capacities (ECF No. 1 ¶ 37), but *Bivens* only applies to federal officials in their *individual* capacities. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 71-72 (2001) ("The [federal] prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP. With respect to the alleged constitutional deprivation, his only remedy lies against the individual."); *see also Buford v. Runyon*, 160 F.3d 1199, 1203 (8th Cir. 1998) (dismissing *Bivens* claim against defendant in his official capacity because sovereign immunity precludes prosecution against the United States and its agencies). Ms. Henny's *Bivens* claims against the United States and the remaining Defendants in their *official* capacities thus should be dismissed.

Ms. Henny's claims against prison officials in their individual capacities fare no better. To establish an individual capacity claim, "[a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Ms. Henny's Complaint fails to allege what each Defendant did or failed to do to violate her constitutional rights. For example, Ms. Henny names BOP Director Colette Peters as a Defendant, but does not allege Ms. Peters was aware of any specific threat of sexual assault against Ms. Henny that Ms. Peters ignored or assert facts tending to establish that Ms. Peters knowingly allowed Ms. Henny to be exposed to smoke from illicit drugs. Neither Ms. Peters nor

any other supervisor can be held liable for the constitutional torts of their subordinates based solely on their supervisory roles. *See id.* (stating that, under *Bivens*, a supervisor cannot be held liable solely because an agent under his or her supervision acted wrongfully). Ms. Henny fails to identify any facts showing how any of the thirty-one defendants named to this action specifically exposed *her* to a risk of harm from sexual assault or illicit drug smoke.[1] Ms. Henny's *Bivens* claims should be dismissed on these grounds.[2]

### E. Claims for Declaratory and Injunctive Relief

Ms. Henny requests an injunction requiring the BOP to "cease all operations at FCI Waseca until such time as the [BOP] can correct the unsafe conditions" and preventing the transfer of any

---

[1] The closest the Complaint comes to asserting anything specific at all is Ms. Henny's contention that, on Friday, August 25, 2023, she heard Officer Wanderscheid yell over the intercom for people to "go down to rec to smoke." (ECF No. 1 ¶ 40.) But this allegation does not suggest *Ms. Henny* was exposed to second-hand smoke—from illicit drugs or anything else—at that time.

[2] The Court does not recommend allowing Ms. Henny to amend her complaint to add the defendant-specific allegations it lacks because it is doubtful a more detailed pleading could save her *Bivens* claims. The United States Supreme Court has only recognized a cause of action under *Bivens* in three limited circumstances: excessive force claims under the Fourth Amendment involving a warrantless search and illegal arrest, *see Bivens*, 403 U.S. at 388; workplace gender discrimination claims in violation of the procedural due process clause of the Fifth Amendment, *see Davis v. Passman*, 442 U.S. 228 (1979); and deliberate indifference to serious medical needs in violation of the prohibition against cruel and unusual punishment under the Eighth Amendment, *see Carlson*, 446 U.S. at 14. *See also Ahmed v. Weyker*, 984 F.3d 564, 567 (8th Cir. 2020) ("On only three occasions has the Supreme Court recognized a cause of action under *Bivens*."). The Supreme Court has made it clear that any further expansion of *Bivens* beyond these three contexts is "a disfavored judicial activity." *Hernandez v. Mesa*, 140 S.Ct. 735, 742 (2020).

Since the Supreme Court has not previously recognized a *Bivens* action under the circumstances Ms. Henny alleges, she seeks to expand its reach. In determining whether to extend *Bivens* to any new context, "[courts] ask whether there are any special factors that counsel hesitation about granting the extension." *Hernandez v. Mesa*, 140 S.Ct. 735, 743 (2020) (internal citations omitted). "The focus is on whether there are any special factors that cause [the court] to pause before acting without express congressional authorization." *Ahmed v. Weyker*, 984 F.3d 564, 570 (8th Cir. 2020) (cleaned up). Because "[i]t does not take much," *id.*, to find special factors warranting judicial restraint, it is unlikely Ms. Henny could successfully establish a cognizable *Bivens* claim in this context.

individual, including herself, to any other BOP facility "in which the same threats to health and safety exist." (ECF No. 1 ¶¶ 45, 51.)  She also requests a declaration that the acts alleged in the Complaint violated her rights under the Constitution and United States law.  (ECF No. 1 at 50.)  These demands should be denied as moot.

When Ms. Henny initiated this action, she was incarcerated at FCI-Waseca, and the alleged conduct and conditions underlying her claims took place at that facility.  *Id.*  Since that time, she has been transferred to the Federal Prison Camp in Pekin, Illinois (FPC-Pekin).  (ECF No. 9.)  Because Ms. Henny's transfer means that she is no longer subject to the conditions giving rise to her claims, her requests for injunctive and declaratory relief are now moot.  *See Gladson v. Iowa Dept. of Corr.*, 551 F.3d 825, 835 (8th Cir. 2009) (citing *Pratt v. Corr. Corp. of Amer.*, 267 F. App'x 482 (8th Cir. 2008) (unpublished per curiam)); *see also Walker v. Bowersox*, 526 F.3d 1186, 1189 (8th Cir. 2008) (transfer to different facility rendered request for injunctive relief moot).

To the extent Ms. Henny requests injunctive relief to *preclude* her transfer to a different facility on grounds that she believes she would be subjected to the same conditions, regardless of where she resides in BOP custody, such a claim is far too speculative to justify injunctive or declaratory relief.  *See Jackson v. Macalester College*, 169 F. Supp. 3d 918, 922 (D. Minn. 2016) (speculative harm cannot justify issuance of a preliminary injunction).  Furthermore, the Court recommends that only Ms. Henny's FTCA claim be allowed to proceed at this time,[3] and the only available remedy under the FTCA is for money damages.  28 U.S.C. § 1346(b).  There is no authority under the FTCA for the Court to issue any other form of relief.  *See Estate v. Trentadue*

---

[3] Ms. Henny has submitted over 500 pages of exhibits in support of her claims.  (*See* ECF No. 3.)  Although pro se complaints are to be liberally construed, it is not incumbent upon the Court to comb through her filings on her behalf, searching for any factual allegations that might sustain a viable cause of action.  *See Bediako v. Stein Mart, Inc.*, 345 F.3d 835, 840 (8th Cir. 2004) (federal courts are not required to "divine the litigant's intent and create claims that are not clearly raised").

*ex rel. Aguilar v. United States*, 397 F.3d 840, 863 (10th Cir. 2005) ("[T]he district court lacks subject matter jurisdiction under the FTCA to provide injunctive and declaratory relief."). Ms. Henny's demands for injunctive and declaratory relief should be denied accordingly.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Plaintiff Kimberly Ann Henny's Federal Tort Claims Act negligence claim against the United States based on her alleged exposure to synthetic cannabinoid smoke be allowed to proceed;

2. The remaining claims asserted in the Complaint (ECF No. [1]), including all claims against Defendants other than the United States, be DISMISSED WITHOUT PREJUDICE;

2. Ms. Henny's request for injunctive relief be DENIED; and,

3. Ms. Henny's request for declaratory relief be DENIED.

## ORDER

It is **HEREBY ORDERED THAT**:

1. The application to proceed *in forma pauperis* of Kimberly Ann Henny (ECF No. [2]) is GRANTED.

2. Ms. Henny must submit a properly completed Marshal Service Form (Form USM-285) for the remaining Defendant, the United States. If Ms. Henny does not complete and return the Marshal Service Form by **December 27, 2023**, the Court may recommend that this matter be dismissed without prejudice for failure to prosecute. The Clerk's Office will provide a Marshal Service Form to Ms. Henny.

3. The U.S. Marshals Service is directed to effect service of process on the United States of America consistent with Rule 4(i) of the Federal Rules of Civil Procedure.

4. Ms. Henny must pay the unpaid balance of $311.45 as the remaining statutory filing fee owed for this action in the manner prescribed by 28 U.S.C. § 1915(b)(2), and the Clerk of Court shall provide notice of this requirement to the authorities at the institution where Ms. Henny is confined.

Dated: November 27, 2023                          *s/ Dulce J. Foster*
                                                  Dulce J. Foster
                                                  United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. See Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).